UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| DARWIN QUESENBERRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 12-48-ART |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION &** |
| CHRYSLER GROUP LLC, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In summer 2011, plaintiffs Darwin Quesenberry and Haskel Prater suffered severe burns when the radiator cap of their 2005 Chrysler Jeep Wrangler Sport unexpectedly malfunctioned.  As in any standard tort case, they sued the company believed to be the manufacturer—Chrysler Group—and sought both compensatory and punitive damages. Chrysler Group, however, is the "New Chrysler" that purchased the assets of Chrysler LLC—the "Old Chrysler"—when Chrysler LLC entered bankruptcy in 2009.  And in this sale, which was approved by the United States Bankruptcy Court for the Southern District of New York, Chrysler Group agreed to assume only certain preexisting liabilities of Chrysler LLC.  Because Chrysler Group did not assume product liability claims seeking punitive damages, the Plaintiffs' claims in this case necessarily challenge the Bankruptcy Court's Sale Order.

Consequently, Chrysler Group has moved to transfer this case to the Southern District of New York for referral to the Bankruptcy Court.  Such a transfer is in the interest of justice because the Bankruptcy Court is in the best position to interpret its Sale Order and determine

whether Chrysler Group assumed any liability for the Plaintiffs' claims.  Chrysler Group's motion to transfer is therefore granted.

## BACKGROUND

### I.      The Chrysler Bankruptcy

According to General Dwight D. Eisenhower, the jeep was one of the four tools that won World War II for the Allies.  J.M. Hirsch, "A Military Plane Soars in Peacetime," L.A. Times (Jan. 4, 1998), http://articles.latimes.com/1998/jan/04/news/mn-5047.  Where did this "ill-riding, canvas-flapping, noisy little mule cart that has so thoroughly captured the imagination of the public" get its name?  Steve Statham, Jeep: Color History 11 (1999).  No one really knows.  As expected, there are more theories than theorists.  Perhaps the most entertaining story, though, is that soldiers—impressed with the jeep's versatility— supposedly named the vehicle after Popeye the Sailor's jungle pet, Eugene the Jeep.  *Id.* at 19; Aaron Robinson, "Storming Normandy in a World War II Jeep," Car and Driver Magazine (Nov. 2009), http://www.caranddriver.com/features/storming-normandy-in-a-world-war-ii-jeep.  Dog-like, able to walk through walls, climb trees, and fly, Eugene the Jeep could go anywhere he wanted—just like the vehicle that powered across the Normandy beaches in 1944.  Jim Allen, Collector's Library: Jeep 16 (3d ed. 2004).  The jeep quickly outgrew its military origins, and car companies began manufacturing the vehicle for civilian consumers in 1945.  *Id.* at 8.  It became so popular that, in 2009, Bloomberg Business Week hailed it as one of the most iconic cars of the past twenty years.  Damian Joseph and Helen Walters, "25 Most Iconic Cars of the Past 20 Years," Bloomberg Business Week (Oct. 2009), http://images.businessweek.com/ss/09/05/0521_iconic_car_designs /24.htm.

Much of the credit for that long-lasting success goes to the Chrysler Corporation (which acquired the Jeep brand in 1987) and its successors, DaimlerChrysler AG followed by Chrysler LLC. *See* Allen, Collector's Library: Jeep at 12. But the company's success came to a halt in 2008 when a global credit crisis reduced the availability of loans to dealers and consumers. Sale Op., R. 1-4 at 6. Coupled with the recession and higher fuel prices, vehicle sales sharply dropped. *Id*. Unable to stay afloat, Chrysler LLC and twenty-four of its domestic subsidiaries voluntarily filed for Chapter 11 bankruptcy on April 30, 2009, in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). Voluntary Pet., *In re Old CarCo LLC (formerly known as Chrysler LLC)*, No. 09-50002 (Bankr. S.D.N.Y. 2009).

The debtor, Chrysler LLC, entered this process with the hope of quickly restructuring itself into a successful company. Chrysler LLC immediately entered into a proposed agreement with Chrysler Group LLC—a new company formed by Italian manufacturer Fiat and New CarCo Acquisition LLC.[1] Sale Op., R. 1-4 at 9. In the proposed Purchase Agreement, Chrysler LLC (the Old Chrysler) agreed to sell most of its operating assets to Chrysler Group (the New Chrysler). *Id.* Chrysler Group paid $2.0 billion and assumed certain liabilities from Chrysler LLC. *Id.* Under the Purchase Agreement, Chrysler Group did not assume liability for any claims that arose before the Agreement's Closing Date except for those liabilities expressly described in the agreement. Sale Order, R. 1-5 ¶ 35 One of the sets of liabilities that Chrysler Group did expressly assume were claims that (1) involve a vehicle sold before the Agreement's Closing Date; (2) arise from an accident that

---

[1] The actual relationships among Chrysler LLC, Chrysler Group, and Fiat are more complicated than this statement suggests, *see* Sale Op., R. 1-4 at 6–10, but the details are not relevant to any rulings in this opinion.

occurred on or after the Closing Date; (3) do not involve alleged exposure to asbestos or other hazardous materials; (4) are not barred by any statute of limitations; and—most relevant here—(5) do not include any claim for punitive damages.  Fourth Amendment to Purchase Order, R. 1-6 at 7.

The Bankruptcy Court notified all interested parties of the proposed agreement and then held a three-day evidentiary hearing to consider whether to approve the proposed Purchase Agreement.  Sale Op., R. 1-4 at 12.  Personal-injury tort victims of Chrysler LLC were represented by the Ad Hoc Committee of Consumer Victims of Chrysler LLC.  *See In re Old CarCo LLC*, No. 09-50002 (Bankr. S.D.N.Y. 2009), R. 1192.  Naturally, this Ad Hoc Committee worried that the estate would sell its most valuable assets to Chrysler Group, leaving them fighting over the scraps left in Bankruptcy Court.  So the Ad Hoc Committee objected to the proposed agreement's limitations on Chrysler Group's liability.  *Id.*; Sale Op., R. 1-4 at 42.  But the Bankruptcy Court overruled its objections, R. 1-4 at 42–44, and approved the Purchase Agreement, *id.* at 47.  The Bankruptcy Court retained jurisdiction to implement, interpret, and enforce the Sale Order, including "to protect Chrysler Group" from any claims.  Sale Order, R. 1-5 ¶ 59; R. 1-6 at 4.

This sale between Chrysler LLC and Chrysler Group closed on June 10, 2009 (the "Closing Date").  *See In re Chrysler LLC*, 576 F.3d 108, 112 (2d Cir. 2009), *vacated as moot by Ind. State Police Pension Trust v. Chrysler LLC*, 130 S. Ct. 1015 (2009).  Once that happened, Chrysler Group took the assets it purchased from Chrysler LLC and emerged from bankruptcy to begin manufacturing and selling cars.  Chrysler LLC received a new name— Old CarCo Liquidation Trust—and remained in the Bankruptcy Court, with creditors and claimants hoping to recover from the few assets that were not sold to Chrysler Group.

## II.   The Plaintiffs' Claims

Given the alleged malfunction of their Chrysler Jeep Wrangler Sport, plaintiffs Darwin Quesenberry and Haskel Prater would probably prefer a competing, less flattering story of how the jeep got its name: When the United States Army realized that its entrance into World War II was inevitable, it solicited 135 car manufacturers to design, bid on, and create a working prototype of a four-wheel-drive utility vehicle on a meager forty-nine-day timeline. Allen, Collector's Library: Jeep at 16. Bantam was the only manufacturer to commit to the deadline and won the bid. *Id.* When Bantam delivered its nameless working prototype—which was hand-built by just three employees—for Army testing only thirty minutes before the deadline, the Army mechanics at Camp Holabird must have been dumbfounded. *See id.* No wonder, then, that when it came time to refer to this new vehicle, the Army mechanics simply turned to the "less-than-complimentary" military slang for unproven recruits and untested equipment, or "jeeps." *Id.* From there, the story goes, the name stuck.

According to the Plaintiffs' allegations, that slang would be an appropriate description of their Jeep: untested and unproven. After all, on July 20, 2011, Quesenberry was driving his 2005 Jeep Wrangler Sport in Prestonsburg, Kentucky, when it began to overheat. Compl., R. 1-1 ¶ 11. Concerned, Quesenberry stopped the car, and he and Prater, his passenger, got out to investigate the problem. *Id.* They raised the hood and stood in front of the Jeep, waiting for the engine to cool down. *Id.* Suddenly, the radiator cap shot off, seriously burning Quesenberry's and Prater's torsos. *Id.* ¶¶ 11–12. As a result, they sued who they believed to be the manufacturer of the Jeep, Chrysler Group, as well as the seller, Hindman Auto Sales, Inc., in Floyd Circuit Court on April 16, 2012. *Id.* at 3–4.

5

Chrysler Group subsequently removed the case to this Court by invoking federal-question jurisdiction. *See* R. 1. It then moved to transfer this case to the Southern District of New York for referral to the Bankruptcy Court. R. 5. Chrysler Group argues that the Bankruptcy Court is the correct venue to determine the viability of the Plaintiffs' claims against Chrysler Group because that determination requires interpreting and enforcing the Bankruptcy Court's Sale Order. *Id.* Neither the Plaintiffs nor Hindman Auto Sales responded to the motion to transfer.

## DISCUSSION

### I.     Motion to Transfer Venue

Chrysler Group LLC's motion to transfer venue has merit. Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district in the interest of justice or for the convenience of the parties." There are two requirements to transfer a matter under § 1412: (1) it must be a "case or proceeding under title 11," and (2) the transfer must be either in the interest of justice or for the convenience of the parties. Here, both requirements are satisfied.

### A.  Eligibility for Transfer Under § 1412

This case is eligible for transfer under § 1412 because it is a "case or proceeding under title 11." Understanding this phrase requires a quick primer on bankruptcy jurisdiction. District courts have subject-matter jurisdiction over three types of bankruptcy proceedings: cases and proceedings "under title 11"; proceedings "arising under title 11"; and proceedings "arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b); *see also Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594, 2605 (2011). The first two types are "core proceedings," while those that are otherwise related to a Title 11 case are "non-core

6

proceedings." *Stern*, 131 S. Ct. at 2605. The scope of a bankruptcy court's and district court's authority often depends on the type of proceeding involved. *See id.* at 2604.

The bankruptcy transfer provision in § 1412 is no exception. The statute permits a district court to transfer "a case or proceeding under title 11." But does that phrase permit the transfer of only core cases and proceedings (those "under" Title 11) or does it also extend to related-to proceedings? District courts have disagreed about the answer, and no circuit court has weighed in yet. *See, e.g.*, *City of Liberal v. Trainmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004) (collecting eleven cases holding that § 1412 governs the transfer of both core and related-to proceedings and ten cases holding that § 1412 governs the transfer of just core proceedings); *see also Doss v. Chrysler Grp. LLC*, No. CV-09-02130-PHX-DGC, 2009 WL 4730932, at *5 (D. Ariz. Dec. 7, 2009) (citing *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 677 (S.D.W. Va. 2005)) (describing the split).

The Court need not enter this debate. Even if § 1412 applies only to core proceedings, this case is eligible for transfer under § 1412 because it involves a core proceeding: the interpretation and enforcement of the Bankruptcy Court's Sale Order and Purchase Agreement. *See, e.g.*, *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 95 (2d Cir. 2006) (holding that an adversary proceeding requiring the bankruptcy court to enforce its sale order is a core proceeding); *In re Allegheny Health Educ. & Research Found.*, 383 F.3d 169, 176 (3d Cir. 2004) (holding that the bankruptcy court "correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders").

Here, according to the Sale Order, Chrysler Group assumed liability only for narrow categories of product liability claims. With respect to product liability claims like the

Plaintiff's, Chrysler Group assumed liability for claims arising from the sale of motor vehicles before the June 10, 2009 Closing Date "solely to the extent that" such claims "(A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages." Fourth Amendment to Purchase Agreement, R. 1-6 at 7.

The Plaintiffs' claims fall within the restrictions of this provision: they arise from a 2005 Jeep manufactured before the June 10, 2009 Closing Date and from a July 20, 2011 motor vehicle accident occurring after the Closing Date. But by seeking punitive damages for their claim, Plaintiffs seek to impose liability on Chrysler Group that is prohibited by the Sale Order, and Chrysler Group's notice of removal and motion to transfer amount to a request to enforce the Sale Order's limitations of liability. *See In re Millenium Seacarriers, Inc.*, 458 F.3d at 95. This is therefore a core proceeding that is eligible for transfer under § 1412.

### B. Whether the Transfer is in the Interest of Justice or for the Convenience of the Parties

Having decided that this case is eligible for transfer under § 1412, the Court will transfer this case to the Southern District of New York for referral to the Bankruptcy Court. Transfer is appropriate under § 1412 if it would either be in the interest of justice or promote the convenience of the parties. *Mello v. Hare, Wynn, Newell & Newton*, No. 3:12-CV-404, 2012 WL 2601945, at *4 (M.D. Tenn. July 5, 2012) (noting that these two standards are

"disjunctive and separate, and transfer is appropriate even if only one is met"). Here, Chrysler Group invokes only the interest-of-justice prong.

As a threshold matter, the Court must presume that the proper venue for this case is the Bankruptcy Court. Under this "home court presumption," the "court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts." *Hohl v. Bastain*, 279 B.R. 165, 177–78 (W.D. Pa. 2002); *see, e.g.*, *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 974 n.26 (11th Cir. 2012); *MD Acquisition, LLC v. Myers*, No. 2:08-CV-494, 2009 WL 466383, at *6 (S.D. Ohio Feb. 23, 2009). Because the Sale Order arose in Old CarCo's Chapter 11 case in the Bankruptcy Court for the Southern District of New York, that court is presumed to be the proper venue for this case.

And the interest of justice is consistent with that presumption. The interest-of-justice standard is a "broad and flexible standard which must be applied on a case-by-case basis." *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990). As with any case-by-case determination, courts recite a myriad of factors to determine whether a transfer is in the interest of justice. The "most important consideration," though, is whether the transfer would "promote the economic and efficient administration of the estate." *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979). Claims that challenge the limitations of liability in the Sale Order—such as the Plaintiffs'—threaten to affect the bankruptcy estate by altering the estate's obligations to Chrysler Group. Without a streamlined interpretation of the Sale Order, there is a risk of inconsistent interpretations that could unravel the Sale Order's

"critical inducement" of "transferring assets [to Chrysler Group] free and clear of existing tort liability." *In re Chrysler LLC*, 576 F.3d at 276.

The Bankruptcy Court is precisely the court to ensure a consistent interpretation. After all, a bankruptcy court's interpretation of its own order is "entitled to substantial deference" because of its special expertise about the order's intended meaning and its greater familiarity with the underlying bankruptcy case. *See Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2204 n.4 (2009). Moreover, the Bankruptcy Court specifically retained jurisdiction to interpret and enforce the Sale Order, including protecting Chrysler Group from any claims made against it, Sale Order, R. 1-5 ¶ 59; R. 1-6 at 4, and it continues to exercise that jurisdiction today. *See, e.g.*, *Wolff v. Chrysler Grp. LLC*, Adv. Proc. No. 10-5007 (Bankr. S.D.N.Y. July 30, 2010), *available at* R. 5-2 (dismissing claims against Chrysler Group because Chrysler Group did not assume such liabilities in the Sale Order). So this transfer will make it more likely that the Sale Order is interpreted and applied as the Bankruptcy Court intended. As many other district courts have found,[2] transferring such claims against Chrysler Group to the Southern District of New York will promote the efficient administration of the estate.

To be sure, a plaintiff's original choice of forum normally carries some weight. *See In re Bruno's Inc.*, 227 B.R. 311, 324–25 (N.D. Ala. 1998). The Plaintiffs in this case, however, did not oppose Chrysler Group's motion to transfer. *Cf.* LR 7.1(c) ("Failure to

---

[2] *E.g.*, *Shatzki v. Abrams*, No. 1:09-CV-02046-LJO-DLB, 2010 WL 148183, at *3 (E.D. Cal. Jan. 12, 2010); *Wolff v. Chrysler Grp.*, No. 5:10-CV-34-PA-DTB (C.D. Cal. Feb. 22, 2010), R. 17; *Carpenter v. Chrysler LLC*, No. 5:10-CV-289-R (W.D. Okla. May 17, 2010), R. 20; *Clark v. Chrysler Grp. LLC*, No. 10-3030, 2010 WL 4486927, at *3 (E.D. Pa. Nov. 5, 2010); *Cooper v. Daimler AG*, No. 1:09-CV-2507-RWS, 2009 WL 4730306, at *4 (N.D. Ga. Dec. 3, 2009); *Monk v. Daimler AG*, No. 1:09-CV-2511-RWS, 2009 WL 4730314, at *5 (N.D. Ga. Dec. 3, 2009); *cf. Doss v. Chrysler Grp. LLC*, No. 09-2130, 2009 WL 4730932 (D. Ariz. Dec. 7, 2009) (transferring a similar action against Chrysler Group under § 1404 in the interests of justice and for the convenience of the parties).

timely respond to a motion may be grounds for granting the motion."); *Manley v.* Engram, 755 F.2d 1463, 1468 (11th Cir. 1985) ("[V]enue is merely a privilege of the parties."). Moreover, this limited transfer to determine the viability of the Plaintiffs' claims will not overly burden the Plaintiffs.  After all, this transfer does not preclude this case from being tried in Floyd Circuit Court once the Bankruptcy Court determines the proper parties and claims consistent with the Sale Order.  Chrysler Group, in fact, has agreed to such a remand if it remains a defendant in this case following the Bankruptcy Court's decision.  *See* R. 5-1 at 10 n.5.  The Plaintiffs' original choice of forum must therefore be discounted.  What's more, there is no reason to believe that this transfer will hamper the Plaintiffs' ability to have a fair trial or to obtain an enforceable judgment.  *Cf. In re Bruno's Inc.*, 227 B.R. at 324–25. Because the balance of considerations overwhelmingly favor the Bankruptcy Court as the proper venue for interpreting and enforcing the Sale Order, the Court will transfer this case.

### C.  Severance of Claims Against Remaining Defendant

The Plaintiffs have also sued Hindman Auto Sales, which sold them the 2005 Jeep that allegedly caused their injuries.  Nothing indicates that the Sale Order has any relevance to the claims against Hindman.  The Court will therefore sever the Plaintiffs' claims against Hindman from this case.

Under Federal Rule of Civil Procedure 21, the Court "may at any time, on just terms, add or drop a party" or "sever any claim against a party."  This broad discretion includes the choice to "sever a claim against a party" to "transfer it to a more convenient forum." 7 Charles A. Wright et al., Federal Practice & Procedure: Civil § 1689 (3d ed. 2012); *see also Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).  "Fairness, including the possibility of prejudice in the absence of severance, is a critical consideration."

*Doss*, 2009 WL 4730932 at *3 (citing *Pena v. McArthur*, 889 F. Supp. 403, 407 (E.D. Cal. 1994)).

Here, sending Hindman along for the ride with Chrysler Group would substantially prejudice Hindman. Hindman was involuntarily dragged into federal court through removal and has not taken any part in this case since then. Indeed, the record does not indicate whether the Plaintiffs ever served Hindman with the complaint before removal, and the Plaintiffs have not served Hindman since removal. Because Hindman has not yet entered an appearance in this case, it has also not been served with Chrysler Group's motion to transfer. Further, nothing in the record indicates that Hindman has any connection to the Chrysler bankruptcy case or that the bankruptcy case will have any effect on the claims against Hindman. It would be "unfair to force [Hindman] to litigate in the Southern District of New York based on a bankruptcy proceeding to which [it has] no connection." *Id.*

Once the claims against Hindman are severed, it does not appear that the Court has any jurisdictional basis to entertain those claims. There is no federal-question jurisdiction over the Plaintiffs' claims against Hindman, which are purely state-law claims for negligence and failure to warn. Compl., R. 1-1 ¶ 22–26. Likewise, there is no diversity jurisdiction over these claims. Diversity jurisdiction generally requires both complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993), *overruled on other grounds by Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1191–93 (2010)). The Plaintiffs and Hindman are all citizens of Kentucky, destroying complete diversity. *See* Compl., R. 1-1 ¶¶ 1–2, 4. And there is no competent proof showing, by a preponderance of the evidence, that the amount in controversy exceeded

12

$75,000 at the time of removal.  28 U.S.C. § 1446(c)(2)(B); *see also King v. Household Fin. Corp. II*, 593 F. Supp. 2d 958, 959–60 (E.D. Ky. 2009) (citing *Gafford*, 997 F.2d at 158, 160).  Without federal jurisdiction over the Plaintiffs' claims against Hindman, the Court must remand these claims to state court.  28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## II.   Motion to Stay Further Proceedings in this Court

Chrysler Group has also moved to stay further proceedings in this case until the Court rules on its motion to transfer venue.  R. 6.  Because the Court agrees that this case should be transferred, Chrysler Group's motion to stay is denied as moot.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1)   The Plaintiffs' claims against Hindman Auto Sales LLC are **SEVERED** from this case and **REMANDED** to the Floyd Circuit Court for all future proceedings.

(2)   Chrysler's motion to transfer venue, R. 5, is **GRANTED**.  The Clerk shall **TRANSFER** this case, which now includes only claims against Chrysler Group LLC, to the United States District Court for the Southern District of New York for referral to the United States Bankruptcy Court in that district. *See* 28 U.S.C. § 157(a) ("Each district court may provide that any or all . . . proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

(3)     Chrysler's motion to stay further proceedings in this case, R. 6, is **DENIED AS MOOT**.

(4)     Following transfer and remand, the Clerk shall **STRIKE** this case from the Court's active docket.

This the 31st day of July, 2012.

**Signed By:**

*__Amul R. Thapar__*

**United States District Judge**